UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

_____

| | | |
|---|---|---|
| Arthur Singleton, #300109, | ) | C/A No. 0:08-2539-RBH-BM |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | RETURN AND MEMORANDUM |
| Willie Eagleton, Warden, | ) | OF LAW IN SUPPORT OF MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| Respondent. | ) | |
| _____ | ) | |

Respondent hereby makes Return to the July 24, 2008 Rule to Show Cause filed by the

Honorable B, United States Magistrate Judge, and responds to the allegations in the *pro se* Petition

for Writ of Habeas Corpus. Respondent is entitled to summary judgment for the following reasons:

## I. PROCEDURAL HISTORY

Petitioner is presently confined in the Evans Correctional Institution, of the South Carolina

Department of Corrections (SCDC), as the result of his Sumter County conviction and life sentence

for armed robbery. The Sumter County Grand Jury indicted Petitioner at the January 2000 term of

court for two counts assault and battery with intent to kill (ABIK) and possession of a firearm during

the commission of a crime of violence (00-GS-43-134). **App. pp. 69-70**. Steven Smith  McKenzie,

Esquire, represented him on these charges.

On September 23, 2003, he received a jury trial in his absence, before the Honorable Clifton

Newman. The jury found him guilty as charged; and Judge Newman issued a sealed sentence. On

February 26, 2004,  the Honorable Howard P. King unsealed the sentence and sentenced him to

twelve years imprisonment for one count of ABIK, and concurrent sentences of seven years

1

imprisonment for the other count of ABIK concurrent, and five years imprisonment for possession

of a firearm.[1]  **App. pp. 25-33; 64-68; 71; 74-153**.  Petitioner did not file an appeal.

However, he filed a *pro se* Post-Conviction Relief (PCR) Application (04-CP-43-501) on

April 16, 2004.  **App. pp. 1-13**.  He alleged the following grounds for relief in his Application:

1.  Trial counsel was ineffective for failing to "litigate that Applicant's Constitutional right to a fast; speedy; and prompt disposition of his case was denied unto him where the State failed to take the fundamental action required by statute § 17-23-120 and § 17-23-60."

2.  "The indictment against the Applicant has not been properly processed pursuant to statute § 14-17-260(b)(c)(d) and the Rules of Procedures of the State grand jury apply to the county grand jury as well pursuant to statute § 14-7-1640, and the state failed to take the necessary steps that are required by statutes of law which resulted in a fundamental defect and issuance of the Application for Post-Conviction Relief is appropriate where the indictment is not attested to in the Clerk's name under [the] seal of the court and failed to sign officially the grand jury document and state the time when it was signed and entered."

3.  "Trial counsel was ineffective, for denying Applicant his constitutional rights [by failing to appeal although instructed by Applicant to perfect an appeal]."

**App. pp. 8-13**.  The State filed a Return dated May 9, 2005.  **App. pp. 21-24**.

The Honorable Thomas W. Cooper, Jr., held an evidentiary hearing into the matter on at the

Sumter County Courthouse on October 6, 2005.  Petitioner was present at the hearing; and Charles

Brooks, Esquire, represented him.  Assistant Attorney General Paula S. Magargle represented the

State.  Petitioner testified on his own behalf, while the State presented the testimony of trial counsel,

Mr. McKenzie.  **App. pp. 35-54**.

On March 17, 2006, Judge Cooper filed an Order of Dismissal, in which he denied relief and

---

[1] Judge King also revoked an unrelated probationary sentence at that time.

2

dismissed the Application with prejudice.  The Order of Dismissal addressed Petitioner's claims that trial counsel was ineffective because he failed to (1) obtain a continuance, and (2) file a notice of intent to appeal on Petitioner's behalf. Judge Cooper found that Petitioner had waived all other allegations because he failed to present any evidence to support them. **App. pp. 56-61**.

Petitioner timely served and filed a notice of appeal.  Deputy Chief Attorney Wanda H. Carter, of the South Carolina Commission on Indigent Defense's Division of Appellate Defense, represented him in collateral appellate proceedings.  On October 23, 2006, Mrs. Carter filed a *Johnson* Petition for Writ of Certiorari[2] on Petitioner's behalf and petitioned to be relieved as counsel.  The only Question Presented in the *Johnson* Petition was stated as follows:

> The PCR court erred in denying petitioner's allegation that he did not voluntarily and intelligently waive his right to a direct appeal in the case.

***Johnson* Petition for Writ of Certiorari at p. 2**.  Petitioner did not file a *pro se* response to the *Johnson* Petition.

The South Carolina Supreme Court filed an Order on September 6, 2007,  in which it denied certiorari and granted counsel's petition to be relieved.  It sent the Remittitur to the Sumter County Clerk of Court on September 24, 2007.

Respondent attaches the following documents to this Return and incorporate these documents by reference:

---

[2]*See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).  *Johnson* sets forth the procedures for counsel to follow when filing meritless appeals in state PCR cases pursuant to *Anders v. California*, 386 U.S. 738 (1967).  *Contra Pennsylvania v. Finley*, 481 U.S. 551 (1987) (prisoner, who had no equal protection or due process right to appointed counsel in post-conviction proceedings, also had no right to insist on *Anders* procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

1.      Appendix, the Honorable Thomas W. Cooper, Jr., Circuit Court Judge;

2.       *Johnson* Petition for Writ of Certiorari dated October 23, 2006;

3.      South Carolina Supreme Court Order dated September 6, 2007;

4.      Remittitur dated September 24, 2007.

## II.  HABEAS ALLEGATIONS

Petitioner raises the following allegations in his *pro se* Petition for Writ of Habeas Corpus:

**GROUND ONE:**            Ineffective Assistance of Counsel.

**SUPPORTING FACTS:**    Trial counsel provided ineffective assistance in failing to 1) obtain a continuance; 2) interview potential witnesses, 3) file direct appeal; 4) properly conduct reasonable pre-trial investigations; and 5) object to the out-of-court identification procedure.

## III.  DISCUSSION

Respondent is entitled to summary judgment.  The present habeas corpus petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, the provisions of the AEDPA apply to this case.  *Lindh v. Murphy*, 521 U.S. 320 (1997).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "The exhaustion doctrine ... is now codified at 28 U.S.C. § 2254(b)(1)." *Id*. (internal citations omitted). "The exhaustion requirement ... serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of

4

prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). "An exception is made only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Id. See also Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (recognizing that, although not jurisdictional, the exhaustion requirement is strictly enforced; and that failure to exhaust remedies will be excused only where exhaustion requirement is expressly waived by the state or petitioner has technically complied therewith). The exhaustion requirement is met only if the federal claim has been "fairly presented" to the state courts, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or no state remedy remains available. *Matthews*, 105 F.3d at 911. To fairly present a claim, a petitioner must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard*, 404 U.S. at 271).

Here, Petitioner's **Ground One** raises five separate allegations of ineffective assistance of counsel. Of these, he only exhausted his **Ground One(3)** (counsel's failure to file a direct appeal) because that was the only issue raised in the *Johnson* Petition for Writ of Certiorari, and Petitioner did not file a *pro se* response to the *Johnson* Petition. His remaining allegations are thus unexhausted and procedurally defaulted from federal habeas corpus review.

Nor can Petitioner find sanctuary in the South Carolina Supreme Court's opinion in *State v. McKennedy*, 348 S.C. 270, 559 S.E.2d 850 (2002). In *McKennedy*, there was a presentation of the claim in the *Anders* brief. *McKennedy* holds that this presentation satisfied its appellate round when *Anders* was applied and did not require further presentation by rehearing or certiorari for that same claim to be preserved. *Id* at 854. What it cannot and should not be deemed to stand for is that the absence of any presentation before the state appellate court may somehow satisfy a fair presentation

responsibility.

As *McKennedy* expressly states, in rejecting the claim by the State that articulation of a claim

in an Anders brief (as opposed to no articulation as in the present case) did not satisfy exhaustion:

### B. *Anders* Brief

The State argues that articulating an issue in an *Anders* brief does not constitute "fair presentation" of that issue to the appellate court necessary to support habeas review. We disagree.

In *Anders v. California*, the United States Supreme Court announced the procedure an appointed attorney should follow if that attorney believes the client's appeal is frivolous and without merit. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Supreme Court held the attorney could petition for permission to withdraw from the case, but that the petition for withdrawal must be accompanied by a brief "referring to anything in the record that might arguably support the appeal." *Id*. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. Under *Anders*, the defendant must be given time to respond and to raise any additional points after his attorney submits the *Anders* brief. *Id*. The court then is obligated to conduct a "full examination" of the record to determine whether the appeal is "wholly frivolous." *Id*. According to *Anders*, if the reviewing court finds the appeal is frivolous, "it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires." *Id*. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498 (emphasis added).

The State argues that a dismissal by the Court of Appeals does not qualify as a decision on the merits for purposes of federal habeas review, insisting that the dismissal is based on a finding of frivolousness. [FN3] The State asserts that arguments presented in an *Anders* brief are not raised for consideration on the merits and are raised merely so the reviewing court may determine if the attorney properly reviewed the case before concluding the appeal was frivolous.

FN3. While this Court cannot determine what constitutes a decision "on the merits" under federal law, this Court can determine, for the purposes of state law, whether or not a dismissal pursuant to an *Anders* brief is a "decision on the merits."

In this particular case, it is clear the Court of Appeals reached the merits in its dismissal. As discussed, according to *Anders*, the reviewing court is obligated to make a full examination of the proceedings on its own. *Anders*. After such an examination, if the reviewing court agrees with the attorney, it may dismiss the appeal or proceed to a decision on the merits. *Id*. On the other hand, if the court

disagrees with the attorney's analysis of the appeal, it must afford the defendant "the assistance of counsel to argue the appeal." *Id*. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. ***The purpose of filing a brief under Anders is to ensure the merits of the appeal are not overlooked***. The court has to conclude independently, regardless of counsel's conclusion, whether or not the appeal has merit before it can dismiss the appeal.

In the case at hand, Appellant's counsel filed an Anders brief with the Court of Appeals and the Appellant filed a *pro se* response, ***raising the issues he considered important***. In the Anders brief, Appellant's counsel argued the trial court committed reversible error by denying Appellant's motion for a continuance under the standard articulated by this Court in *State v. Williams*, 305 S.C. 116, 406 S.E.2d 357 (1991). After reviewing both documents and the record as a whole, the Court of Appeals dismissed the appeal pursuant to Anders and Williams. ***The Court of Appeals' citation to Williams indicates, at the very least, that it reviewed the merits of the argument Appellant's counsel put forth in the Anders brief: whether the trial court erred in denying Appellant's motion for a continuance.***

As Appellant has not yet filed any federal habeas petition, we do not know what arguments he will choose to raise. The federal court ultimately will determine whether any issues raised to the Court of Appeals were properly presented for purposes of granting federal habeas relief. **To guide them, however, and for purposes of state law, we find the Court of Appeals' dismissal in this case was on the merits.**

*McKennedy*. 559 S.E.2d at 854. Clearly, and unlike Petitioner, McKennedy made a presentation of the same claim to the court within the *Anders* brief which the court concluded was a ruling "on the merits." The same cannot be said for the claims asserted by Petitioner in **Ground One**, apart from his **Ground One(3)**.[3]

However, Petitioner does not have any state court remedies available to him because any future PCR application would be barred as successive under S.C. Code Ann. § 17-27-90 (1985); *Aice v. State,* 305 S.C. 448, 409 S.E.2d 392 (1991), and any future PCR application would be untimely

_____

[3] Indeed, the only other allegation addressed by the state PCR judge was Petitioner's contention that trial counsel was ineffective because he failed to obtain a continuance. *See* **App. pp. 56-61**.

7

under the one-year statute of limitations which governs the filing of PCR actions. S.C. Code Ann.

§ 17-27-45(A) (Supp. 2008).  Therefore, the exhaustion requirement is technically satisfied.

Petitioner's technical compliance with the exhaustion requirement, however, does not entitle

him to relief.  Under the AEDPA, the standard of review to be applied in habeas is "quite deferential

to the rulings of the state courts."  *Burch v. Corcoran*, 273 F.3d 577 (4th Cir. Nov. 28, 2001).  The

Fourth Circuit Court of Appeals explained in *Lawrence v. Branker*,517 F.3d 700, 707-08 (4th Cir.

2008), that pursuant to the standards promulgated in 28 U.S.C. § 2254, a federal habeas Court may

> grant a petition with respect to any claim adjudicated on the merits in state court only if the state-court decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C.A. § 2254(d)(1).

> A decision of a state court is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court adjudication is an unreasonable application of federal law when the state court "correctly identifies the governing legal rule [from the Supreme Court's cases] but applies it unreasonably to the facts of a particular ... case," *id.* at 407-08, or "applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply the principle of a precedent in a context where such failure is unreasonable," *Robinson* [*v. Polk*], 438 F.3d [350,] 355 [(2006)] (internal quotation marks omitted). The state court's application of clearly established federal law must be "objectively unreasonable," for a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. at 409, 411. The phrase "clearly established federal law" refers "to the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.

8

In deciding whether a petitioner has demonstrated the deficiency of the state-court adjudication under § 2254(d), we must presume state court findings of fact to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1).

Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be "unreasonable" for habeas relief to be granted. This is "a substantially higher threshold." *Id* at 410; *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939-40 (2007).[4]

## GROUND ONE(3)

The only allegation preserved for this Court's review is Petitioner's **Ground One(3)**, in which he alleges that he received ineffective assistance of counsel because counsel failed to file a direct appeal. Respondent submits that the state courts' rejection of Petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent. § 2254(d)(1).

To establish that he received ineffective assistance of counsel, an inmate must make a twofold showing. *See Wiggins v. Smith*, 539 U.S.510 (2003). First, he must demonstrate that his attorneys' "representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688 (1984). The inmate must also demonstrate that he was prejudiced

---

[4] If the United States Supreme Court has never addressed the claim presented to the state court, then, the state court decision cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law' [under § 2254(d)(1)." *Carey v. Musladin*, 127 S.Ct. 649, 653-54 (2007) (Ninth Circuit Court of Appeals erred by holding the state court of appeal's decision was contrary to or an unreasonable application of clearly established federal law as determined by th Supreme Court, where the state court decision was contrary to Ninth Circuit precedent but the Supreme Court had never decided the issue).

by his attorneys' ineffectiveness, *i.e.*, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Petitioner testified at the PCR hearing that trial counsel failed to file a notice of intent to appeal on his behalf, even though Petitioner told counsel that he wished to appeal.[5] **App. pp. 41; 44-45**.[6]

Trial counsel testified that he had a conversation with Petitioner after the trial:

> We may have discussed the appeal, but it was only to the standpoint of, [Petitioner], I don't think you have a case to appeal because you didn't show up for trial, and if you don't show up for trial, it's kind of difficult for ... there to be any evidence really to appeal on.

Although Petitioner never asked him to appeal his case, he would have filed the notice if he had been asked to file an appeal. **App. pp. 49-50**.

Counsel explained that the real problem in the case was that Petitioner refused to attend the trial, even though counsel attempted to persuade him during the trial itself. Petitioner had a prior conviction for crack cocaine and "was no stranger to the system," but he was scared and would not attend the trial. **App. pp. 50-51**.

Counsel thereafter testified that "there wasn't any evidence ... to appeal. And if [Petitioner]

---

[5] Petitioner made a voluntary decision not to attend his trial because he was scared and he thought that retained counsel was there for him and had promised him that counsel would obtain a continuance; but he claimed that he was in communication with trial counsel up until the time that he was incarcerated in December. He also testified that he was at his home throughout that time. **App. pp. 40-45**.

[6] The PCR judge's Order contains a finding that "Applicant admitted that the sentencing judge advised him of his right to appeal." **Order, p. 5, App. p. 60**. Petitioner did not testify to this matter. Nor did Judge King, who unsealed the sentence and sentenced him, give him such advice. **App. pp. 25-33**. Therefore, it appears that this was an unreasonable factual finding under § 2254(d)(2). However, that finding does not entitle Petitioner to relief.

10

and I discussed the appeal, that's what I would have told him, but he never asked me to appeal." **App. pp. 51-52**.

The PCR judge found that trial counsel's testimony  was credible and that Petitioner's testimony was not credible.  The PCR judge further found that Petitioner failed to prove that trial counsel's representation was deficient, or that there was a reasonable probability that counsel's deficient conduct prejudiced the outcome of Petitioner's trial. **Order, p. 5, App. p. 60**. Petitioner is not entitled to relief.

In *Roe v. Flores-Ortega*, 458 U.S. 470 (2000) the United States Supreme Court clarified the application of the *Strickland* standard to a claim that an attorney was constitutionally deficient for failing to file a notice of appeal in any context.  In the absence of a direct instruction from a defendant to appeal, the question of whether counsel's failure to appeal is constitutionally deficient depends upon "whether counsel in fact consulted with the defendant about an appeal." *Id* at 478.

If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instructions to appeal.  *Id*.  However, if counsel has failed to consult, the reviewing court must consider whether this failure constitutes deficient performance.  The Court expressly declined to impose any bright-line test in *Flores-Ortega*, noting that the circumstances may be such that even a failure to consult would not render counsel's performance deficient.  *See id* at 479 ("We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense") In doing so, a Court should consider whether "(1) . . . a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal); [and] (2) . . . [whether] this particular defendant reasonably

11

demonstrated to counsel that he was interested in appealing." *Id*. at 480. However, the Fourth

Circuit Court of Appeals has indicated that the inquiry begins with a rebuttable presumption that the

lack of consultation demonstrates deficiency. *See Frazer v. South Carolina*, 430 F.3d 696, 707 (4th

Cir.2005) ( "Where, as here, the defendant has not specifically requested an appeal, counsel is under

a professional obligation to 'consult' with defendant regarding [the appeal], unless circumstances

demonstrate that consultation is unnecessary") (citing *Flores-Ortega*, 458 U.S. at 478-79).[7]

     If the Court determines that counsel's performance was deficient, the Court must then

determine whether the defendant was prejudiced thereby. "[E]vidence that there were non-frivolous

grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often

be highly relevant in" demonstrating prejudice. *Id* at 485. However, in the prejudice context, the

Petitioner must make the "additional showing 'that, had he received reasonable advice from counsel

about an appeal, he would have instructed his counsel to file an appeal.' " *Frazer*, 430 F.3d at 708

(quoting *Flores-Ortega*, 528 U.S. at 486).

     Initially, Respondent submits that the state PCR judge's finding that counsel's performance

was objectively reasonable under *Strickland* was neither contrary to nor an unreasonable application

of *Flores-Ortega*. First, it appears that counsel "may have" consulted about an appeal and explained

---

[7] Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. *Id* at 479; *see also id* at 488 (Breyer, J. concurring in part and dissenting in part). Even where the defendant pleads guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id*.

that there were no appealable issues because Petitioner was voluntarily tried in his absence. Even if the Court concludes that counsel failed to consult about an appeal, Petitioner still did not establish deficient performance because he failed to prove that "(1) . . . a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal); or (2) . . . that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

There was conflicting testimony from Petitioner and his trial counsel, Mr. McKenzie, on both points. The PCR judge rejected Petitioner's testimony as lacking credibility and he found that trial counsel's testimony was credible. **Order, p. 5, App. p. 60**. This Court may not grant relief based upon his factual findings unless they are objectively unreasonable. § 2254(d)(2). Further, his findings are entitled to a presumption of correctness, which Petitioner must rebut by clear and convincing evidence. § 2254(e)(1). *See also Roberts v. State*, 361 S.C. 1, 602 S.E.2d 768 (2004); *Drayton v. Evatt*, 312 S.C. 4, 430 S.E.2d 517 (1993)(noting that great deference is given to the PCR court's findings when matters of credibility are involved because this Court lacks the opportunity to directly observe the witnesses). Petitioner simply did not meet his burden.

Indeed, he never identified a supposedly meritorious appellate issue in state court, and he couched the continuance matter as an ineffectiveness claim. Further, a review of the trial transcript, **App. pp. 74-153**, reflects that there, in fact, no meritorious issues for review on appeal. The only matters raised by trial counsel were his motions for (1) a continuance; (2) sequester a fact witness; and (3) a directed verdict.

Counsel moved for a continuance pretrial. He initially noted that he did not have a client present. He had been in contact with Petitioner and he had spoken to Petitioner on the night before

the trial.  He told Petitioner "what is going on" and that the case was going to be tried that day.

Petitioner's response, however, "was that he would call me back this afternoon."  **App. p. 81**.[8]

Petitioner had not cooperated in preparing for trial, and he noted that a bench warrant had

been issued the previous week when Petitioner failed to appear for court.  He acknowledged that this

was an old case and that "I don't know where he is in order to get him to be here for this trial."  He

added that Petitioner was scared. However, counsel was not asking to be relieved because he felt that

might prejudice Petitioner before the jury.  Instead, he asked for a continuance, until Petitioner could

be picked up and a competency evaluation could be done.  **App. pp. 81-82**.

The State opposed the motion.  The Assistant Solicitor first pointed out that this case

originated in 1999; and he noted that Petitioner had "already been picked up and released on one

bench warrant.  Also, Petitioner had been represented by another attorney (Joseph Spigner, Esquire)

until September 15, 2003, or eight days before trial.[9]  Original counsel had received notice of the trial

date.  However, Petitioner had retained Mr. McKenzie Friday September 12th, and counsel obtained

a continuance because he was recently retained from Judge Cooper.  **App. pp. 82-83**.

However, Judge Cooper revoked Petitioner's bond and issued the bench warrant because it

appeared that Petitioner was attempting to delay his trial.  The Assistant Solicitor recognized that

trial counsel was "in a difficult spot," but he argued that the case would never be tried if Petitioner

was allowed "to pick and choose when he wants to come to court."  The Assistant Solicitor also

noted that Petitioner had been arrested two or three other occasions following his arrest in this case

---

[8] Counsel had problems contacting Petitioner.  Petitioner had counsel's cell phone
number; but the caller identification on counsel's phone always indicated that the number was
private.

[9] Again, his case was tried on September 23, 2003.

and he was out on bond for those charges. The State agreed to a continuance until that afternoon but asked that the case be tried that day. **App. pp. 83-84**.

The trial judge found that Petitioner had not made a meritorious showing for a continuance, and that there was "no showing of merit in order for a competency evaluation. The trial judge then set an estreatment hearing for the bondsman that afternoon in order that he could explain Petitioner's whereabouts. The trial judge expected Petitioner to attend that hearing and noted that there could be a trial *in abstentia* if the State met its burden or the ciourt could try another pending case. **App. p. 84**. *See also* **App. pp. 92-94**.

After this ruling, trial counsel stated that he had spoken to the lawyer in the pending case and that attorney felt the other case would take the remainder of the day to try. However, the trial judge confirmed that he would hold the estreatment hearing that afternoon and that Petitioner's case would follow. He suggested that counsel "light a fire under [Petitioner] since he is on the bond." Counsel stated that he had a number for Petitioner's girlfriend and would attempt to locate Petitioner there. **App. pp. 84-85**.

"The trial court's denial of a motion for a continuance will not be disturbed on appeal absent a clear abuse of discretion." *State v. Morris*, 376 S.C. 189, 208, 656 S.E.2d 359, 369 (2008) (citing *State v. McMillian*, 349 S.C. 17, 21, 561 S.E.2d 602, 604 (2002)). Reversals for the denial of a continuance "are about as rare as the proverbial hens' teeth." *State v. McMillian*, 349 S.C. at 21, 561 S.E.2d at 604 (citing *State v. Lytchfield*, 230 S.C. 405, 409, 95 S.E.2d 857, 859, (1957)).

Likewise, the ordering of a competency examination is within the discretion of the trial judge. *State v. Drayton*, 270 S.C. 582, 584, 243 S.E.2d 458, 459 (1978); *State v. Singleton*, 322 S.C. 480, 483, 472 S.E.2d 640, 642 (Ct.App.1996). The refusal to grant such an examination will not be

disturbed on appeal absent a clear showing of an abuse of that discretion. *Drayton*, 270 S.C. at 584, 243 S.E.2d at 459; *State v. Buchanan*, 302 S.C. 83, 85, 394 S.E.2d 1, 2 (Ct.App.1990). "This is so, because the determination of whether there is 'reason to believe' a defendant lacks a certain mental capacity necessarily requires the exercise of discretion." *State v. White*, 364 S.C. 143, 147-48, 611 S.E.2d 927, 929 (Ct.App.2005) (citing and quoting *State v. Bradshaw*, 269 S.C. 642, 644, 239 S.E.2d 652, 653 (1977)).

An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. Irick*, 344 S.C. 460, 464, 545 S.E.2d 282, 284 (2001); *State v. Funderburk*, 367 S.C. 236, 239, 625 S.E.2d 248, 249-50 (Ct.App.2006). If there is any evidence to support the trial judge's decision, it will be affirmed on appeal. *State v. Wilson*, 345 S.C. 1, 7, 545 S.E.2d 827, 829 (2001); *State v. Taylor*, 360 S.C. 18, 598 S.E.2d 735 (Ct.App.2004). Even without any evidentiary support, "[i]n order for an error to warrant reversal, the error must result in prejudice to the appellant." *State v. Preslar*, 364 S.C. 466, 473, 613 S.E.2d 381, 385 (Ct.App.2005); *see also State v. Beck*, 342 S.C. 129, 536 S.E.2d 679 (2000); *State v. Wyatt*, 317 S.C. 370, 453 S.E.2d 890 (1995) (error without prejudice does not warrant reversal).

In the present case, Petitioner could not show any conceivable abuse of discretion where the only basis for the continuance motion was a request for a competency evaluation after Petitioner was located and locked up. In turn, the only "showing" that Petitioner was incompetent was predicated upon his voluntary refusal to cooperate. Under these circumstances, the appeal of the trial judge's ruling would be frivolous, and not meritorious.

Further, the State consented to the witness' sequestration, and there was nothing for an appellate court to review with respect to that motion. **App. p. 98**. *State v. Sinclair*, 275 S.C. 608,

16

610, 274 S.E.2d 411, 412 (1981) ("Inasmuch as the appellant obtained the only relief he sought, this court has no issue to decide") (citing *State v. Brown*, 274 S.C. 48, 260 S.E.2d 719 (1979)).

Finally, the only other objection or motion in the record was trial judge's directed verdict motion. **App. p. 130**. "Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998), *citing Wright v. West*, 505 U.S. 277, 296 (1992). Federal review of the sufficiency of the evidence to support a petitioner's state court conviction is not meant "to consider anew the jury's determination of guilt or to replace the State's system of direct appellate review." *Wilson*, 155 F.3d at 405-06. *See also Wright*, 505 U.S. at 292. Therefore, a defendant is entitled to review only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)(footnote omitted); *George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996).[10]

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n. 16. Also, a federal

---

[10] "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id* at 318-319.

Moreover, this standard is consistent with South Carolina law, *State v. Stokes*, 299 S.C. 483, 484, 386 S.E.2d 241, 241 (1989), which holds that, in determining whether to submit the case to the jury, the trial judge is concerned only with the existence or non-existence of evidence. He is not concerned with its weight. It is his duty to submit the case to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Brisbon*, 474 S.E.2d 433, 436 (1996). In making this determination, the evidence presented at trial must be viewed in the light most favorable to the State. This standard applies to both direct or circumstantial evidence cases. *Id*; *State v. Edwards*, 298 S.C. 272, 370 S.E.2d 888 (1989), *cert. denied*, 493 U.S. 895 (1989); *State v. Williams*, 468 S.E.2d 626 (1996); *State v. Prince*, 316 S.C. 57, 447 S.E.2d 177 (1993).

reviewing court must consider circumstantial as well as direct evidence and allow the government

the benefit of all reasonable inferences from the facts proven to the facts sought to be established.

*United States v. Tresvant*, 677 F.2d 1018 (4th Cir. 1982).  Further, "under *Jackson*, the assessment

of the credibility of witnesses is generally beyond the scope of review."  *Schlup v. Delo*, 513 U.S.

298, 330 (1995).  *See also Jackson*, 443 U.S. at 318-319 ("[T]his inquiry does not require a court to

'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable

doubt").  Finally, when faced with evidence that allows conflicting inferences, this Court must

presume that the jury resolved such conflicts in the state's favor.  *Jackson*, 443 U.S. at 326.

In *State v. Sutton*, 340 S.C. 393, 396, 532 S.E.2d 283, 285 (2000), the Court explained that:

> ABIK is an unlawful act of violent nature to the person of another
> with malice aforethought, either express or implied. State v. Foust,
> 325 S.C. 12, 479 S.E.2d 50 (1996). The often cited language to
> describe ABIK is: if the victim had died from the injury, the
> defendant would have been guilty of murder. *See*, *e.g.*, *State v. Atkins*,
> 293 S.C. 294, 360 S.E.2d 302, 305 (1987). Furthermore, a specific
> intent is not required to commit ABIK. *State v. Foust*, 325 S.C. 12,
> 479 S.E.2d 50, 51 (1996).

(Footnotes omitted).

Applying this criteria to the case at bar, it  is clear that Petitioner was not entitled to a directed

verdict on the charges against him, and that there would not have been any merit to an appeal of the

trial judge's implicit adverse ruling.  Lionel Bradley testified that he had been released from the

hospital four or five days before October 2, 1999.  A school teacher whom he knew came to his

residence and offered to sell him a car.  After their conversation, she apparently drove him to a

corner in downtown Sumter, South Carolina, near where his child's mother lived. **App. pp. 99-100**.

He remained there for five or ten minutes.  A friend, Sherman Sanders, saw him and they

briefly spoke.  As his son was walking to where he was standing on his crutches, Mr. Bradley saw Petitioner and another person drive by in a blue car.  Their car turned onto a side street and Bradley continued talking to his friend.  However, he turned around when he heard "a car slamming on brakes."  Mr. Bradley  then turned around and faced the roadway.  When he did, he saw Petitioner get out of the car, armed with a gun in his hand. **App. pp. 100-01**.

Mr. Bradley turned back around to see where his son was.  As he did so, two gunshots "went off."  The first shot struck him in the chest. He immediately dropped his crutches, and tried to "get out of the way.  And after that, I just jumped in the car with [Sanders] and asked him to take me to the hospital."  They met an ambulance on the way to the hospital and Mr. Bradley got in it.  He remained in the hospital four or five days.  The bullet had pierced his lung and wound up in his chest. a tube was inserted into his chest to drain blood; but doctors could not remove the bullet because it was too close to his heart, and it was still in his chest.  **App. pp. 101; 104-05; 110-111**.

Mr. Bradley had previously had a confrontation with Petitioner, who was dating the mother of Mr. Bradley's child.  However, he had not threatened Petitioner; and he and Petitioner had not exchanged any words that day.  **App. pp. 101-02; 105**.

Ronnette Davis was on a friend's porch, near the shooting, that day and she was the other prosecution witness.  She saw the blue car back up, but she did not initially pay much attention to it because she thought that the occupants merely wanted to talk to a group of people who had congregated in the area. She heard what she thought were two firecrackers explode and when she looked in the area of the noise, she saw a man pointing a gun out of the window of the blue car.  She also saw Petitioner's friend, Sherman Sanders, "on the ground[,] wallowing."  She testified that he had been shot in the leg.  **App. pp. 114-18**.

19

Respondent submits that this evidence was sufficient to submit the charge of ABIK to the jury. Therefore, appeal of the trial judge's denial of this motion would not have been meritorious. Thus, there were no meritorious issues to review on appeal. As a result, Petitioner failed to demonstrate that counsel's performance was deficient and, more importantly, that he was prejudiced thereby. "[E]vidence that there were non-frivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in" demonstrating prejudice. *Flores-Ortega*, 458 U.S. 485.

Further, in the prejudice context, Petitioner must make the "additional showing 'that, had he received reasonable advice from counsel about an appeal, he would have instructed his counsel to file an appeal.' " *Frazer*, 430 F.3d at 708 (quoting *Flores-Ortega*, 528 U.S. at 486). Again, the factual dispute between Petitioner and trial counsel was resolved by the state PCR judge adversely to Petitioner, and his credibility determination was not objectively unreasonable. § 2254(d)(2). Further, his findings are entitled to a presumption of correctness, which Petitioner has failed to rebut by clear and convincing evidence. § 2254(e)(1).

### GROUNDS ONE(1)-(2) & (4)-(5)

Petitioner further asserts that trial "counsel provided ineffective assistance in failing to 1) obtain a continuance; 2) interview potential witnesses; 4) properly conduct reasonable pre-trial investigations; and 5) object to the out-of-court identification procedure. Respondent submits that Petitioner procedurally defaulted on each allegation because he failed to present any of these allegations to the state supreme court on certiorari. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Kornahrens v. Evatt*, 66 F.3d 1359, 1362 (4th Cir. 1995) (Even under *in favorem vitae* review an inmate's claim is procedurally barred unless specifically raised to the state supreme court);

20

*Gilbert v. Moore*, 134 F.3d 642 (4th Cir. 1998)(en banc)(same). *Julius v. Johnson*, 840 F.2d 1533, 1546 (11th Cir. 1988).

In *Bell v. Cone*, 543 U.S. 447, 451 n. 3 (2005), the Court noted that: "as a general matter, the burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised," *citing Baldwin v. Reese*, 541 U.S. 27, 30- 32 (2004). Much like the abuse of writ doctrine, the procedural default doctrine "refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." *McCleskey v. Zant*, 499 U.S. 467, 489 (1991). "Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). This is a corollary to the rule that "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Id*. at 392.

The procedural default can only be excused if a habeas petitioner can demonstrate both cause for the procedural default and prejudice as a result of the alleged constitutional violation, or if he can demonstrate that failure to review the constitutional claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50. The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that " fundamental fairness [remains] the central concern of the writ of habeas corpus." *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A prisoner may establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is actually innocent. *See, e.g., Deitz v. Money*, 391

F.3d 804, 808 (6th Cir.2004). In order to raise a claim of actual innocence, a prisoner "must present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). This standard applies when a prisoner presents a valid claim of constitutional error. *Id* at 316.

Moreover, Petitioner cannot demonstrate both cause for the procedural default and prejudice as a result of the alleged constitutional violation, or that failure to review the constitutional claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50. Of these allegations, Petitioner only presented his claim that counsel was ineffective for failing to get a continuance in the state PCR court. He testified that trial counsel was ineffective for failing to get a continuance in his case. As discussed, he testified that he did not show up for his trial because counsel told him he would get a continuance and because he was scared. On cross-examination, however, he admitted that he was in contact with counsel throughout the trial and up until the time that he was incarcerated in December. He also testified that he was at his home throughout that time. **App. pp. 39-45**.

Counsel testified that he called Petitioner and informed Petitioner that his case was coming up for trial. However, Petitioner would not come to court. Counsel never guaranteed Petitioner that he could get a continuance in his trial, and he explained "all I can do is go try and get a continuance." Counsel also spoke with Petitioner during the trial and begged Petitioner to come to court for the trial because he felt that he thought "this jury will do the right thing" if Petitioner attended the trial, but that Petitioner refused to come to court. Counsel believed that if Petitioner had come to court that he would have been acquitted but that it was Petitioner's decision not to come to court. **App. pp.**

**46-51**.

The PCR court found that "trial counsel's testimony was credible and the Applicant's testimony was not credible." The PCR court further found that Petitioner failed to establish deficient performance because "[t]his was a matter of trial strategy and not ineffective assistance of counsel. Where counsel articulates a valid strategic reason for his action or inaction, counsel's performance should not be found ineffective. Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1996). This allegation of ineffective assistance of counsel is denied." Alternatively, the PCR judge found that Petitioner had not established "the second element of Strickland requiring prejudice. Therefore, Applicant has failed to show prejudice." **App. pp. 58-59**.

Petitioner cannot show cause for and prejudice from the default for several reasons. First, counsel did move for a continuance upon the only good-faith basis available to him. As demonstrated in the preceding section, however, Petitioner simply refused to attend his own trial: apparently because he feared going to prison. This does not warrant a continuance. *See Brown v. Mitchell*, 441 F.3d 392, 414 (6th Cir. 2006) (noting that no actual prejudice was shown under *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), and observing that a continuance is properly denied where the need is caused by the client's refusal to cooperate); *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) (denial of a continuance, arguably wrong, does not necessarily make it unconstitutional and the circumstances of the case determine whether the denial is so arbitrary as to violate due process under *Ungar*; actual prejudice must be shown).

Further, the PCR judge found that the testimony that counsel had promised Petitioner that he would secure a continuance was not credible and that counsel's testimony was credible. Again, the factual dispute between Petitioner and trial counsel was resolved by the state PCR judge

adversely to Petitioner, and his credibility determination was not objectively unreasonable.  §
2254(d)(2).  Further, his findings are entitled to a presumption of correctness, which Petitioner has
failed to rebut by clear and convincing evidence.  § 2254(e)(1).

Moreover, Petitioner is not entitled to relief because he did not show what a continuance
would obtain, *United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986), or to show how counsel's
effectiveness was diminished without the continuance.  *Snow v. Sirmons*, 474 F.3d 693, 723-24 (10th
Cir. 2006) (court did grant one-day continuance and nothing suggests a slightly longer continuance
if requested would enable counsel to learn information); *United States v. Soto-Alvarez*, 958 F.2d 473,
478 (1st Cir. 1992); *United States v. Garcia-Rosa*, 876 F.2d 209, 230 (1st Cir. 1989).  He also failed
to show prejudice. *Wade v. Calderon*, 29 F.3d 1312, 1317 (9th Cir. 1994).  In *Alderman v. Zant*, 22
F.3d 1541, 1548 (11th Cir. 1994), the Court determined that, in the context of ineffective assistance,
the failure to seek a continuance requires an abuse of discretion and arbitrary action.  The Court
specifically noted the trial court's broad discretion under *Morris v. Slappy*, 461 U.S. 1, 11 (1983),
and looked in particular at the reasons presented to the trial judge (or reasons allegedly existing) at
the time. The denial of a continuance was likewise rejected as not beyond the universe of possible,
credible outcomes under the AEDPA in *Brown v. O'Dea*, 227 F.3d 642, 646 (6th Cir. 2000) (not so
arbitrary and unfair as to violate due process).

Thus, Petitioner is not entitled to relief based on his attorney's failure to obtain a continuance.
he remaining allegations were not litigated and Petitioner likewise cannot meet his burden to excuse
the default or show a miscarriage of justice.

**V.**

24

Each and every allegation contained within the Petition not hereinbefore either expressly

admitted, qualified or explained is hereby denied.

## CONCLUSION

WHEREFORE, having made Return, Respondent requests that the Petition be denied and

dismissed.

Respectfully submitted,

HENRY D. McMASTER
Attorney General

JOHN W. McINTOSH
Chief Deputy Attorney General

DONALD J.  ZELENKA
Assistant Deputy Attorney General
ID No.  4425

WILLIAM EDGAR SALTER, III
Senior Assistant Attorney General
ID No. 3710

**ATTORNEYS FOR RESPONDENT**


By:    s/William Edgar Salter, III
        Office of the Attorney General
        Post Office Box 11549
        Columbia, South Carolina 29211
        Telephone: (803) 734-6305

October 15, 2008.

25